UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. STEPHEN ALEXANDER VADEN, *JUDGE*

| | |
|---|---|
| PORSCHE MOTORSPORTS NORTH AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 16-00182 |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN FURTHER
SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

*Of Counsel*:
EDWARD N. MAURER
Deputy Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

BEVERLY A. FARRELL
Senior Trial Attorney
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-9230
Attorneys for Defendant

Dated: July 9, 2021

# **TABLE OF CONTENTS**

BACKGROUND ............................................................................................................................. 2

PRIOR PROCEEDINGS ................................................................................................................ 3

SUMMARY OF ARGUMENT ...................................................................................................... 4

ARGUMENT .................................................................................................................................. 5

    I.    CBP CORRECTLY DETERMINED THAT THE IMPORTED MERCHANDISE COVERED BY ENTRY NUMBERS KB5-5376882-5, KB5-5378599-3, AND KB5-5381385-2 IS NOT CLASSIFIABLE UNDER SUBHEADING 9801.00.85 ............. 5

        A.  Summary Judgment Standard ................................................................................ 5

        B.  The Legislative History to Subheading 9801.00.85, HTSUS, Is Fatal To PMNA's Position ................................................................................................ 6

        C.  PMNA's Parts And Components Returned To The United States Are Not Implements, Instruments, Or Tools Of Subheading 9801.00.85, HTSUS ............. 7

        D.  PMNA's Inventory Items Returned To The United States Were Not Used In The Course Of A Trade, Occupation, Or Employment ................................................ 8

        E.  The Government's Interpretation Of The Term "Use" Is Correct ......................... 9

    II.   PLAINTIFF FAILED TO ESTABLISH NONRECEIPT OF THE NOTICES THROUGH WHICH CBP PROPERLY EXTENDED THE TIME TO LIQUIDATE ENTRY NUMBERS KB5-5376882-5 AND KB5-5378599-3 ................................. 11

    III.  PLAINTIFF'S REBUTTAL TO DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.3 STATEMENT OF ADDITIONAL UNCONTESTED FACTS SHOULD BE REJECTED ................................................................................................... 13

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................. 5-6

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................... 5, 6

*Ford Motor Co. v. United States*,
   992 F. Supp. 2d 1346 (Ct. Int'l Trade 2014) .............................................................. 3
   181 F. Supp. 3d 1308 (Ct. Int'l Trade 2016) ............................................................ 13

*Hanover Ins. Co. v. United States*,
   26 CIT 796 (2002) ................................................................................................ 11, 12

*Hudson v. Principi*,
   260 F.3d 1357 (Fed. Cir. 2001) .................................................................................. 4

*Intergraph Corp. v. Intel Corp.*,
   253 F.3d 695 (Fed. Cir. 2001) .................................................................................. 3-4

*Johnston v. IVAC Corp.*,
   885 F.2d 1574 (Fed. Cir. 1989) .................................................................................. 6

*Porsche Motorsports North America, Inc. v. United States*,
   Court No. 16-00182, Slip Op. 18-105, 2018 WL 4029172
   (Ct. Int'l Trade Aug. 22, 2018) ................................................................................ 2, 4

*United States v. White*,
   846 F.2d 678 (11th Cir. 1988) .................................................................................... 3

**Harmonized Tariff Schedule of the United States**

Subheading 9801.00.85 ........................................................................................... *passim*

**USCIT Rules**

USCIT Rule 56.3 ............................................................................................................ 13

**Additional Resources**

Merriam-Webster.com,
  https://www.merriamwebster.com/dictionary/ ........................................................................ 7-8

New York Ruling Letter N013372 ............................................................................... 9, 10

New York Ruling Letter N013373 ............................................................................... 9, 10

S. Rep. 104-393,
  Sec. 44 (*Articles Used To Provide Repair and Maintenance Services*) ...................................... 6

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. STEPHEN ALEXANDER VADEN, *JUDGE*

| | |
|---|---|
| PORSCHE MOTORSPORTS NORTH AMERICA, INC., : : : Plaintiff, : : v. : : UNITED STATES, : : Defendant. : : | Court No. 16-00182 |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

In accordance with the Court's February 23, 2021 Scheduling Order, defendant, United States (the Government), respectfully submits this reply memorandum in opposition to plaintiff's, Porsche Motorsports North America, Inc. (PMNA), motion for summary judgment and in further support of our cross-motion for summary judgment.  As shown in our cross-motion for summary judgment (XMSJ), and further demonstrated below, U.S. Customs and Border Protection (Customs or CBP) correctly determined that the merchandise imported under cover of Entry Nos. KB5-5376882-5, KB5-5378599-3, and KB5-5381385-2 is not entitled to duty-free treatment under subheading 9801.00.85, Harmonized Tariff Schedule of the United States (HTSUS).  Accordingly, we respectfully request that the Court enter an Order denying plaintiff's motion for summary judgment; granting our cross-motion for summary judgment; and dismissing this action in its entirety.

**BACKGROUND**

This action involves PMNA's exportation and return of a trailer stocked with automotive tools and parts to be made available, if needed by race teams competing in certain automobile races in Canada. Amended Joint Statement of Material Facts (AJSMF), Docket No. 81 at ¶¶ 2, 7, 8, 17, 19; *Porsche Motorsports North America, Inc. v. United States*, Court No. 16-00182, Slip Op. 18-105, 2018 WL 4029172, *1 (Ct. Int'l Trade Aug. 22, 2018) (*2018 Decision*).

PMNA exported certain automobile parts and accessories, in addition to a select number of hand tools (the "inventory items"), from the United States to be made available for purchase by race teams at car races in Canada. AJSMF at ¶ 17; Def. Ex. 1 (Transcript of USCIT Rule 30(b)(6) Deposition of PMNA) at 28:22-29:07. Prior to exportation, PMNA filed Certificates of Registration with an attached invoice covering inventory items that it was exporting to Canada. Docket No. 81-2, AJSMF Exs. 1, 2, 3 (Certificates of Registration).

At the Canadian races, race teams were not permitted to borrow any of the inventory items. Def. Ex. 1 at 32:18-32:21. Instead, if a race team needed an inventory item, it purchased that item, the item remained permanently with the race team, and PMNA did not reimport it into the United States. AJSMF ¶ 30, Def. Ex. 1 at 36:13-36:17; 56:13-56:20. After each of the three Canadian races, PMNA reimported unsold inventory items,[1] which were unused in Canada and remained in their original packaging. Def. Ex. 2 (Pl. Resp. to Second Set of Interrogatories ¶ 2); Def. Ex. 1 at 35:03-35:05, 36:18-36:21, 37:04-37:09, 61:03-61:07. PMNA was under no contractual obligation with the race teams or any other party to make the inventory items available for sale in Canada. Def. Ex. 3 (Pl. Resp. to Req. for Prod. of Docs) at ¶ 2.

---

[1] PMNA also included in the trailer reimported after the Canadian races items that were imported by PMNA into Canada, but were not part of the "inventory items" listed on the Certificates of Registration. In connection with these items, PMNA filed a "prior disclosure" letter with CBP. These added items are reflected in Exhibits 12, 13, and 14 to the AJSMF.

In addition to the inventory items, PMNA also exported various hand tools ("permanent tools") to Canada for the Canadian race. Def. Ex. 2 at ¶¶ 1.A, 1.B. As distinguished from the "select" hand tools described above, which are part of the inventory items, the permanent tools were not available for sale, but race teams could borrow them with the understanding that they had to be returned to PMNA. Def. Ex. 1 at 29:08-29:12; Def. Ex. 4 (Pl. Resp. to First Set of Interrogatories) at ¶ 6. After each race, PMNA reimported the permanent tools, but did not individually declare these items because PMNA considered them to be part of its truck. Def. Ex. 2 at ¶ 1.B; Def. Ex. 1 at 48:04-48:10. CBP did not classify or assess duties on the permanent tools. Def. Ex. 1 at 47:18-50:19. Although PMNA did not keep a list of the permanent tools on the truck or any of the entries at issue, it has provided a "Workshop Tool Inventory" as part of Exhibit 7 to the AJSMF. Docket No. 81-2 at 138-39/533.

## PRIOR PROCEEDINGS

As discussed in our opening brief, the Court has already considered whether the imported merchandise qualifies for duty-free treatment by operation of classification under subheading 9801.00.85, HTSUS. Def. XMSJ at 4-6. In its prior decision, the Court reached no conclusions as to whether the merchandise covered by the subject entries qualifies for duty-free treatment under subheading 9801.00.85, HTSUS. Nevertheless, the doctrine of "law of the case" is implicated because the Court issued a decision in this action on other issues. This doctrine encompasses issues expressly decided or "decided by necessary implication." *United States v. White*, 846 F.2d 678, 684 (11th Cir. 1988); *see also Ford Motor Co. v. United States*, 992 F. Supp. 2d 1346, 1355 (Ct. Int'l Trade 2014). "The doctrine of law of the case generally bars retrial of issues that were previously resolved." *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695,

697 (Fed. Cir. 2001). Whether to apply this doctrine is within the discretion of the Court. *Hudson v. Principi*, 260 F.3d 1357, 1363 (Fed. Cir.2001).

With respect to PMNA's contention that the Government's notice of extension of liquidation was invalid because it lacked a reason, the Court held that the Government had provided PMNA with a reason for the extension of liquidation, and even if the notice had lacked a reason it would have constituted harmless error. The Court granted summary judgment to the Government on this issue. *2018 Decision*, 2018 WL 4029172, *4.

The Court did not issue summary judgment on the issue of whether the presumption of regularity applied to whether the Government issued notices of suspension of liquidation for Entry Nos. KB5-5376882-5 and KB5-5378599-3. The Court disagreed with the Government's regularity argument observing that "the date of '12-12-15' on the notice of extension for Entry One [KB5-5376882-5] speaks for itself: if it is not a clerical error then it is a belated notice." *2018 Decision*, 2018 WL 4029172, *3.

## SUMMARY OF ARGUMENT

Although Entry Nos. KB5-5376882-5 and KB5-5378599-3 were not liquidated within one year of entry, these entries did not liquidate by operation of law because the time for liquidation had been properly extended, as we established in our cross-motion for summary judgment. Indeed, PMNA now concedes that the Government is entitled to the presumptions of regularity and delivery of the timely January 24, 2015 notices of extension. Pl. Response at 8. Because PMNA did not meet its burden of showing non-receipt of these notices with evidence from witnesses with integral knowledge of the receipt, review, filing, and forwarding of all Customs notices of suspensions of liquidation, the Government is entitled to summary judgment on this issue.

With respect to duty-free treatment under subheading 9801.00.85, HTSUS, PMNA has failed to show that its imported goods are (i) professional implements, instruments, or tools; (ii) of a trade, occupation, or employment; (iii) returned to the United States after having been exported for use temporarily abroad; and (iv) imported by or for the account of the person who exported such goods. First, PMNA acknowledges that certain articles it imported from Canada had not been exported from the United States to Canada. Thus, such articles that were either not registered at exportation or were acquired in Canada are ineligible for duty-free treatment under subheading 9801.00.85, HTSUS, because they could not have been "returned to the United States after having been exported for use temporarily abroad," as they had not been exported, or registered as exported, in the first place.

Next, the articles included on PMNA's Certificates of Registration and entry documents consist of spare parts and accessories that PMNA concedes it exported for *possible* sale in Canada for automobile repairs and, if not sold, these articles were returned to the United States in their original packaging. As such, these articles are not implements, instruments or tools of an occupation or trade, were not exported for use temporarily abroad, and, thus, do not satisfy the terms of subheading 9801.00.85, HTSUS.

## ARGUMENT

I. **CBP CORRECTLY DETERMINED THAT THE IMPORTED MERCHANDISE COVERED BY ENTRY NUMBERS KB5-5376882-5, KB5-5378599-3, AND KB5-5381385-2 IS NOT CLASSIFIABLE UNDER SUBHEADING 9801.00.85, HTSUS**

A. **Summary Judgment Standard**

Summary judgment should be entered "against a party who fails to make a showing sufficient to establish an essential element to that party's case" and for which the "party bears the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, "there is

no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Summary judgment may be granted in favor of a defendant on an ultimate issue of fact where the defendant carries its burden of 'pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.'" *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989) (quoting *Celotex*, 477 U.S. at 325).

### B. The Legislative History To Subheading 9801.00.85, HTSUS, Is Fatal To PMNA's Position

PMNA contends that the legislative history cited by the Government in its cross-motion for summary judgment supports PMNA's position that "the inventory articles (vehicle parts and components) identified on the attachment to the CF-4455 Certificates of Registration are "Tools of Trade." Pl. Response at 9-10. PMNA is wrong.

The legislative history for subheading 9801.00.85, HTSUS, explains that the promulgation of this subheading was intended to allow companies to avail themselves of what had been a personal-allowance exemption. S. Rep. 104-393, Sec. 44 (*Articles Used To Provide Repair and Maintenance Services*) at 24-25. The Senate Report explained that the personal-allowance exemption was for "[g]oods used by technicians and engineers to provide repair services abroad." Subheading 9801.00.85, HTSUS, covers "[p]rofessional books, implements, instruments, and tools of trade, occupation, or employment, when returned to the United States after having been exported for use temporarily abroad." PMNA concedes that "the articles identified on CF-4455 [Certificate of Registration] were exported with the intention that they be made available for use." Pl. Response at 10. But this is not the standard. Intentions and being made available for possible use are not the terms of this subheading.

6

Rather, as is plain from the language of the subheading and the legislative history, the books, implements, instruments and tools covered by subheading 9801.00.85, HTSUS, are those *used to provide repairs abroad and then returned*. However, the only PMNA items on the CF-4455s used for the repair of race cars did not return the United States. Thus, those articles cannot satisfy subheading 9801.00.85, HTSUS, because they were not returned. Instead, the bulk of the articles on the CF-4455s were not used to provide repairs and were simply returned. Thus, these returned articles cannot satisfy subheading 9801.00.85, HTSUS.

### C. PMNA's Parts And Components Returned To The United States Are Not Implements, Instruments, Or Tools Of Subheading 9801.00.85, HTSUS

PMNA claims that the Government too narrowly, and without support, interprets the terms "implements, instruments, and tools" of subheading 9801.00.85, HTSUS. Pl. Response at 11-12. PMNA's argument is unconvincing. Our brief provides definitions for each of these terms and simply applies their common meaning. Def. XMSJ Br. at 13-14.

PMNA claims that the trade, occupation, or employment at issue here is automobile racing and repair. Pl. Response at 14. PMNA's parts or components are not the implements, instruments, or tools for auto racing. The automobile owned by the racing teams plays that role. Instead, PMNA's parts and components are best viewed as items that might be used in the repair of those vehicles. However, those parts and components are not the implements, instruments, or tools for repair, they are the item to be acted on by implements, instruments or tools to effectuate a repair.

As we explained in our moving brief, an implement is defined as "a device used in the performance of a task," or an item that "serves as an instrument or tool." Def. XMSJ Br. at 13 (*Implement*, Merriam-Webster.com, https://www.merriamwebster.com/dictionary/implement (last visited May 24, 2021)). An instrument is an item "used by another as a means or aid" or an

7

"implement *especially:* one designed for precision work." *Id.* at 13-14 (*Instrument*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/instrument (last visited May 24, 2021)). A tool is defined as "a handheld device that aids in accomplishing a task" or "something (such as an instrument or apparatus) used in performing an operation or necessary in the practice of a vocation or profession." *Id.* at 14 (*Tool*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/tool (last visited May 24, 2021)). A plain reading of these definitions reveals that all three terms relate to items used to act on another item. PMNA's repair parts or components are the item being acted on to effectuate a repair, they are not themselves the implements, instruments, or tools.

### D. PMNA's Inventory Items Returned To The United States Were Not Used In The Course Of A Trade, Occupation, Or Employment

PMNA claims that the record does not support our point that the inventory items for which PMNA seeks duty-free treatment under subheading 9801.00.85, HTSUS, were not used in the course of a trade, occupation, or employment. Pl. Response at 12-15. PMNA is wrong.

PMNA claims that the trade, occupation, or employment at issue here is automobile racing and the repair of automobiles. Pl. Response at 14. But there is no dispute that PMNA does not race the vehicles or repair them. Pl. Response at 13 ("While PMNA is not physically driving or repairing the vehicles…."). Instead, it simply made a trailer filled with auto parts and accessories available to race teams at Porsche races held in Canada. AJSMF at ¶¶ 12, 17, 19; Pl. Response at 14. Instead, PMNA claims, *ipse dixit*, that making tools, knowledge, and parts available at races converts PMNA from a supplier to an entity engaged in auto racing and auto repair. Pl. Response at 15. It does not. Rather, the undisputed facts establish that independent Porsche race teams, not PMNA, are the ones engaged in automobile racing and repair. Pl. Resp. to Def. Statement of Facts ¶ 15; Docket No. 81 (AJSMF) ¶ 24.

8

Nevertheless, as discussed above, the only items from the CF-4455s that were used for automobile repair were not returned to the United States and thus do not satisfy that requirement of subheading 9801.00.85, HTSUS.  The remaining items on the CF-4455s were not used in the course of a trade, occupation, or employment.

### E. **The Government's Interpretation Of The Term "Use" Is Correct**

PMNA claims that our interpretation of "after having been exported for use temporarily abroad" is overly restrictive, does not take into account prospective use, and is inconsistent with Customs administrative interpretations.  Pl. Response at 16-19.  PMNA is incorrect.

First, the plain terms of "exported for use temporarily abroad" simply cannot cover PMNA's conduct.  PMNA sent a trailer filed with thousands of articles, only some which were used by the race teams, and that PMNA knew could not be returned by PMNA to the United States.  Docket No. 73 at ¶ 30 (Joint Statement Uncontested Facts Docket) No. 87 at ¶¶ 2, 3 (Pl. Resp. to Def. Statement of Facts).  PMNA knew with virtual certainty that some articles listed on the CF-4455s would be used by, and remain with, the race teams in Canada and not be returned. *See* Docket No. 81-2 (Supp. Decl. of Brian Blocker) at ¶ 51.  Therefore, these items cannot satisfy the "for use *temporarily*" requirement of subheading 9801.00.85, HTSUS.

PMNA also knew that the bulk of its CF-4455 articles would not be used abroad at the races.  Docket No. 81-2 (Supp. Decl. of Brian Blocker) at ¶ 51.  In an effort to satisfy the plain language of subheading 9801.00.85, HTSUS, PMNA suggests that availability for use means the same thing as exported for use.  Pl. Response at 16-17.  To support this position, PMNA points to CBP rulings that permitted the return of a limited number of items that had been exported for specific repairs abroad, but were ultimately not needed.  Pl. Response at 17-19 (citing New York Ruling letters N013372 and N013373).

9

First, ruling letters are not binding on this Court. Second, these rulings undermine, rather than support, PMNA's position. The circumstance of exporting a trailer filled with thousands of parts and accessories without knowing both that a repair will be necessary and that the race team would not have the parts on hand is strikingly different from circumstances at issue in New York Ruling letters N013372 and N013373. Indeed, PMNA fully expects and intends that none of its tools, parts and accessories will be used at the Canadian races. Thus, by its own admission, PMNA is not exporting its trailer for use temporarily abroad in the trade, occupation or employment of automobile racing or repair. *See* Docket No. 82-2, Pl. MSJ Ex. 18 (86-93/93) at ¶¶ 26-28.

Further, this admission highlights the dissimilarity of its activities with those described in New York Rulings N013373 and N013372 where airline repair kits were assembled in the United States *for a specific airplane repair*, and then exported to a foreign location *where the repair was performed*. CBP determined that the fact that a few of the items in the kit were ultimately not needed for the specific repair for which they had been assembled did not foreclose their classification under subheading 9801.00.85, HTSUS, upon return to the United States. *See* PMSJ Exhibits 15 and 16. Unlike the PMNA trailer, the airline kits were not assembled for possible airplane emergencies or failures that might require a repair because in the past an airplane had suffered such an emergency or failure. *See id.* And unlike the PMNA trailer, 90 percent of the airplane repair items were not returned unused and in their original packaging. *Compare* PMSJ Exhibits 15 and 16 *with* Docket No. 81-2 (Supp. Decl. of Brian Blocker) at ¶ 51. Thus, PMNA's reliance on New York Ruling letters N013372 and N013373 is unwarranted.

For the reasons provided in our cross-motion for summary judgment and in this reply, the Court should affirm CBP's determination that the declared inventory items are classifiable

according to their respective HTSUS provisions, and not as "tools of trade" in subheading 9801.00.85, HTSUS.

## II.   PLAINTIFF FAILED TO ESTABLISH NONRECEIPT OF THE NOTICES THROUGH WHICH CBP PROPERLY EXTENDED THE TIME TO LIQUIDATE ENTRY NUMBERS KB5-5376882-5 AND KB5-5378599-3[2]

In its response, PMNA admits that the Government "establish[ed] that CBP timely generated and delivered the notices with the correct address," and acknowledges that the Government is "entitled to the presumptions of regularity and delivery of the January 24, 2015 notices of extension." Pl. Response at 8. As a result, the burden shifts to "PMNA to establish non-receipt of the Notices of Extension of liquidation for entries KB5-5376882-5 and KB5-5378599-3." Pl. Response at 8. In order to establish non-receipt, a party must provide evidence from witnesses "with integral knowledge of the receipt, review, filing, and forwarding of all Customs notices of suspensions of liquidation," in other words the witnesses who can establish the path of receipt of Customs notices. *Hanover Ins. Co. v. United States*, 26 CIT 796, 803 n.5 (2002).

In an attempt to meet its burden, PMNA points to testimony from its August 2, 2017 USCIT Rule 30(b)(6) deposition. Pl. Response at 8-9. At that deposition, PMNA testified that Mr. Robert Resetar, the Customs & Trade Compliance Manager of Porsche Cars North America, Inc., maintains by form number the customs-related documents that are scanned and emailed to him from PMNA. Def. Ex. 1 at 10:24-12:16; 76:23-77:2. PMNA further testified that Mr. Brian Blocker, an employee of PMNA, is the person who sends Mr. Resetar customs-related

---

[2] Plaintiff acknowledges that the second issue it raised regarding CBP's notices, that the notices did not identify the reason for the extension, has been resolved by the Court. Pl. Response at 4, n.1.

documents. *Id.* at 77:9-13. PMNA did not know what happens to the hard copies of the customs-related documents that are scanned and sent to Mr. Resetar. *Id.* at 91:6-12.

None of the Brian Blocker declarations submitted with PMNA's motion for summary judgment discuss PMNA's mail receipt process or PMNA's process for sending customs-related documents to Mr. Resetar. *See* Docket No. 81-2 at Exs. 5 (113-124/533), 6 (125-128/533), and 23 (466-469/533). Instead, according to PMNA, an unnamed female executive administrative assistant (Executive Assistant) receives PMNA's mail, sorts it, and distributes it to either Mr. Jens Walther or Mr. Brian Blocker. Def. Ex. 1 at 87:18-88:3. PMNA does not know whether the Executive Assistant has ever lost a piece of mail or gave a piece of mail to the wrong person. Def. Ex. 1 at 88:25-89:5.

Finally, PMNA testified that, in October 2016, it moved its offices from Santa Ana, California to Carson, California. *Id.* at 86:9-16. PMNA had no knowledge of whether documents were discarded in the move or whether anything went missing in the move, but it would have been PMNA employees who packed up documents for the move. *Id.* at 86:17-87:6.

Given the lack of evidence from the persons who can establish the path of receipt of Customs notices, PMNA has failed to meet its burden of non-receipt. *See Hanover*, 26 CIT at 803 n.5. Accordingly, because PMNA concedes that Customs is entitled to the presumptions of regularity and delivery of the January 24, 2015 notices of extension, but has not met its burden of showing non-receipt, the Court should grant summary judgment to the Government on this issue and find that liquidation for Entry Nos. KB5-5376882-5 and KB5-5378599-3 was properly extended and no deemed liquidation for these two entries occurred.

### III. PLAINTIFF'S REBUTTAL TO DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.3 STATEMENT OF ADDITIONAL UNCONTESTED FACTS SHOULD BE REJECTED

In connection with its Response, PMNA filed a document fashioned as "Plaintiff's Rebuttal to Defendant's Response to Plaintiff's Rule 56.3 Statement of Additional Uncontested Material Facts Pertaining to the Classification Issue." We object to this submission because the Court's Rules do not contemplate such a submission. Instead, Rule 56.3 provides in relevant part:

> (a) On any motion for summary judgment filed pursuant to Rule 56, the factual positions described in Rule 56(c)(1)(A) must be annexed to the motion in a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit this statement may constitute grounds for denial of the motion.
>
> (b) In the papers opposing a Rule 56 motion for summary judgment, the factual positions described in Rule 56(c)(1)(B) must include correspondingly numbered paragraphs responding to the numbered paragraphs in the statement of the movant, and if necessary, additional paragraphs including a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.

By its plain terms, Rule 56.3 allows only for a moving party's statement of material facts, and an opponent's response to those statements including additional paragraphs containing material facts the non-movant contends establish a genuine issue to be tried. Therefore, replies or rebuttals to a Rule 56.3 response are not permitted and should be disregarded. *Ford Motor Co. v. United States*, 181 F. Supp. 3d 1308, 1311 n.7 (Ct. Int'l Trade 2016) ("The Court notes that replies to responses to facts are not contemplated in USCIT Rule 56.3 and, therefore, the Court disregards Plaintiff's 16 paragraphs of replies in submission ECF No. 97-1."). Because PMNA's "rebuttal" is not contemplated by the rules, we do not respond to it. However, should

the Court decide to consider this submission, we respectfully request an opportunity to respond in writing to the rebuttal.

## CONCLUSION

For the foregoing reasons and those presented in our cross-motion for summary judgment, defendant respectfully requests that an order be entered denying plaintiff's motion for summary judgment; granting defendant's cross-motion for summary judgment and dismissing this action in its entirety; and granting defendant such other and further relief as may be just and appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

By:   /s/Aimee Lee
      AIMEE LEE
      Assistant Director

      /s/ Beverly A. Farrell
*Of Counsel*:                           BEVERLY A. FARRELL
EDWARD N. MAURER                        Senior Trial Attorney
Deputy Assistant Chief Counsel          Civil Division, U.S. Dept. of Justice
International Trade Litigation          Commercial Litigation Branch
U.S. Customs and Border Protection      26 Federal Plaza, Room 346
                                        New York, New York 10278
                                        Tel.: (212) 264-9230
                                        Attorneys for Defendant

Dated: July 9, 2021

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. STEPHEN ALEXANDER VADEN, *JUDGE*

| | | |
|---|---|---|
| PORSCHE MOTORSPORTS NORTH AMERICA, INC., | : : : : | |
| Plaintiff, | : : | Court No. 16-00182 |
| v. | : : | |
| UNITED STATES, | : : : | |
| Defendant. | : : | |

## CERTIFICATE OF COMPLIANCE

I, BEVERLY A. FARRELL, a Senior Trial Attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is the attorney responsible for Defendant's Reply Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Further Support of Defendant's Cross-Motion for Summary Judgment, relying upon the word count feature of the word processing program used to prepare the response, certify that this memorandum complies with the word count limitation under the Court's chambers procedures and contains 4015 words.

/s/ Beverly A. Farrell
Beverly A. Farrell